STATE OF HAWAII, Plaintiff-Appellant, *v.* MOSES JENKINS, Defendant-Appellee

NO. 7465

NOVEMBER 7, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY LUM, J.

This is an appeal by the State of Hawaii from an order of the circuit court suppressing the State's use as evidence in its prosecution against the defendant contraband drugs discovered by the police in a knapsack belonging to the defendant. The circuit court had held that the search of the knapsack was unconstitutional.[1] The State urges error by the trial court on two grounds: Since the knapsack was recovered by the police during a legal search of an automobile in which defendant was a passenger, the automobile exception to the warrant requirement under the constitution permitted the police to search the knapsack without a warrant. Because the defendant had already been arrested for possession of marijuana, the search of the knapsack was incidental to his arrest. Having examined the arguments of the State, we reject both arguments and uphold the order of the lower court.

I.

In the afternoon of January 15, 1979, two officers of the Honolulu Police Department were on duty in Waikiki. One of the officers smelled the odor of burning marijuana. They then approached a van occupied by defendant and another person; the arresting officer observed a plastic bag containing marijuana on top of a knapsack on the floor of the van on the passenger side occupied by defendant. He seized the marijuana and placed the defendant under arrest. The other officer in the meantime was occupied with the other passenger on the other side of the van. After defendant's arrest, defendant was taken to the front of the vehicle. At that point,

---

[1] Fourth amendment, U. S. Constitution, and article I, section 7, of the Hawaii State Constitution.

the arresting officer was instructed by the other officer "to return back and check out the knapsack." The van was then searched, the knapsack seized and opened, wherein the drugs were discovered. Defendant was again placed under arrest for promoting dangerous drugs.

## II.

It is well established in this jurisdiction that warrantless searches are unreasonable unless they fall within one of the specifically established and well delineated exceptions. *State v. Kender*, 60 Haw. 301, 307, 588 P.2d 447, 451 (1978); *State v. Elderts*, 62 Haw. 495, 617 P.2d 89 (1980). We have long recognized that automobile searches may be excluded from the warrant requirement. The investigation officer must have probable cause for the search and exigent circumstances must exist for proceeding without a warrant. *State v. Agnasan*, 62 Haw. 252, 614 P.2d 393 (1980); *State v. Elliott*, 61 Haw. 492, 605 P.2d 930 (1980); *Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. United States*, 267 U.S. 132 (1925).

We stated in *Elliott, supra,* that what has become obvious is that the term "exigent circumstances" is incapable of precise definition and that each case must be decided on its own facts. At the very least, however, there must be a showing that at the time of the warrantless search and seizure there was probable cause to search; and that the police had reason to believe that because of the car's mobility or exposure, there was a foreseeable risk that it might be moved or that evidence which it contained might be removed or destroyed before a warrant could be obtained.

The question presented on this appeal — whether the automobile exception extends beyond a search of the automobile itself, and in this case to a search of the knapsack found on the floor of the van — has never been answered in this jurisdiction.

Two recent U. S. Supreme Court cases may help to formulate our decision on this issue. In *United States v. Chadwick*, 433 U.S. 1 (1977), a double-locked footlocker, which federal

agents had probable cause to believe contained narcotics, was seized by federal agents along with the automobile into which it had been loaded. The trunk and the automobile were taken to the Federal Building. The footlocker was then opened without a warrant.

The U. S. Supreme Court held the search to be constitutionally invalid, stating:

> By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. . . . There being no exigency, it was unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides.

*Id.* at 11.

The State in this appeal argues, as the government did in *Chadwick,* that the rationale used to uphold automobile searches inheres to luggage found pursuant to such automobile searches.

We adopt the language of *Chadwick* in rejecting the State's argument:

> The answer lies in the diminished expectation of privacy which surrounds the automobile:
>
>> "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis,* 417 U.S. 583, 590 (1974) (plurality opinion).
>
> Other factors reduce automobile privacy. "All States require vehicles to be registered and operators to be licensed. States and localities have enacted extensive and detailed codes regulating the condition and manner in which motor vehicles may be operated on public streets and highways." Automobiles periodically undergo official inspection, and they are often taken into police custody in the interests of public safety.
>
> The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Lug-

gage contents are not open to public view, except as a
condition to a border entry or common carrier travel; nor
is luggage subject to regular inspections and official
scrutiny on a continuing basis. Unlike an automobile,
whose primary function is transportation, luggage is in-
tended as a repository of personal effects. In sum, a
person's expectations of privacy in personal luggage are
substantially greater than in an automobile.
*Id.* at 12-13 (citations omitted).

*Arkansas v. Sanders*, 442 U.S. 753 (1979), helped to re-
solve some apparent misunderstanding as to the application
of *Chadwick*. In *Sanders*, the police stopped defendant's taxi,
opened the trunk of the taxi and found a suitcase therein, and
without permission of defendant, opened the unlocked suit-
case, where marijuana was discovered.

We adopt the language of *Sanders* to uphold the order of
the lower court:

We conclude that the State has failed to carry its
burden of demonstrating the need for warrantless
searches of luggage properly taken from automobiles. A
closed suitcase in the trunk of an automobile may be as
mobile as the vehicle in which it rides. But as we noted in
*Chadwick*, the exigency of mobility must be assessed at
the point immediately before the search — after the
police have seized the object to be searched and have it
securely within their control. See 433 U.S., at 13. Once
police have seized a suitcase, as they did here, the extent
of its mobility is in no way affected by the place from
which it was taken. Accordingly, as a general rule there is
no greater need for warrantless searches of luggage taken
from automobiles than of luggage taken from other
places.

Similarly, a suitcase taken from an automobile
stopped on the highway is not necessarily attended by any
lesser expectation of privacy than is associated with lug-
gage taken from other locations. One is not less inclined
to place private, personal possessions in a suitcase
merely because the suitcase is to be carried in an au-
tomobile rather than transported by other means or tem-

porarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them. *Accordingly, the reasons for not requiring a warrant for the search of an automobile do not apply to searches of personal luggage taken by police from automobiles. . . .*
*Id.* at 763-65 (footnotes omitted) (emphasis added).

Turning to the instant appeal, the evidence is clear that the knapsack involved had a flap with two buckles, a zipper housing, and another flap. The officer does admit to opening the knapsack, although the evidence is not clear how it was done.

On the basis of *Chadwick* and *Sanders*, we hold that the automobile exception to the warrant requirement under the constitution does not extend to a search of the knapsack. The officer had placed the defendant under arrest, taken defendant to the front of the van, then returned to the interior of the vehicle to seize the knapsack. No exigent circumstances existed then to conduct a warrantless search of the knapsack, and we hold such search to be unreasonable.

III.

A contemporaneous search incidental to a lawful arrest may be made for the fruits of the crime, implements used to commit the crime and for weapons. *State v. Park,* 50 Haw. 275, 276, 439 P.2d 212, 213 (1968).

As in *Chadwick*, we cannot condone the action of the police in searching the knapsack on the basis it was incidental to a lawful arrest. Once law enforcement officers have reduced luggage or other personal property to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

Accordingly, the judgment is affirmed.

*Arthur E. Ross (Peter B. Carlisle* on the opening brief), Deputy Prosecuting Attorneys, for plaintiff-appellant.

666

*Christopher D. Ferrara (Robinson & Ferrara* of counsel), for defendant-appellee.