636 A.2d 656

COMMONWEALTH of Pennsylvania, Appellant,

v.

John JOHNSON.

Superior Court of Pennsylvania.

Argued Oct. 5, 1993.

Filed Jan. 24, 1994.

Michael Erlich, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Karl L. Morgan, Philadelphia, for appellee.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

 This is an appeal from the January 13, 1993 order granting appellee's, John Johnson, motion to suppress. The Commonwealth presents the following question for our review:

> Did defendant retain a reasonable expectation of privacy in a bag of crack cocaine vials, so as to bar police from examining the bag, after defendant placed the bag in a tree in a public park and walked away from it?

Commonwealth's Brief at 3. For the reasons set forth below, we reverse and remand for trial.

Preliminarily, we point out that "[w]hen passing on a challenge to the decision of the suppression court, we are limited primarily to question [sic] of law, and we are bound by the suppression court's findings of fact, provided those findings are supported by the record." *Commonwealth v. Tillman,* 423 Pa.Super. 343, 344, 621 A.2d 148, 149 (1993) (citations omitted). The suppression court's findings of fact are as follows:

> Officer Frank Sheridan testified [that on Thursday, September 10, 1992 at approximately 5:40 p.m.,] he received an

anonymous phone tip from a woman stating that she lived in the neighborhood of 52nd and Pine Streets, and she was sick and tired of the drug dealing, and she wanted to do something about it. She stated she observed a black male standing in the middle of a park just south of Pine Street. She described the male as wearing a gray t-shirt with multi-color horizontal stripes, light blue jeans, dark boots or sneakers, and a red baseball cap. She said she observed him make several transactions, where people would come up, give him money, and he would place something in their hand.

Officer Sheridan and his partner went to the northeast corner of 51st Street and Osage Avenue in uniform and in a marked police car to conduct a surveillance. The officers observed [appellee] from 25–30 car lengths away. Officer Sheridan observed [appellee] standing inside the park, mid-way between 51st and 52nd Streets, about 20 feet from the southside curb of Pine Street. [Appellee] was wearing clothing matching the description in the anonymous phone tip. Officer Sheridan observed [appellee] standing alone in the park for approximately 10–15 minutes when another man approached him. (This other man was approximately 6'3" tall, 150–160 pounds and was ragged and unclean in appearance.) The two men appeared to be conversing for a moment; then [appellee] walked over to a tree, 10–12 feet away, reached up and removed a brown plastic bag. [Appellee] walked over to the other man and opened the bag. The man leaned over and looked into the bag. The two men conversed a moment; then [appellee] put the bag in the same place in the tree. [At this time, appellee was 10–12 feet from the tree.] . . .

The man then walked away from [appellee] and did not return. After observing [appellee] another five minutes during which [appellee] had no other verbal or physical contact with anyone or anything, the officers approached him. The police vehicle pulled into the park and stopped directly in front of [appellee]. The front of the van was facing [appellee], approximately one foot away from his

body. A park bench was next to [appellee] on the right hand side. Both uniformed officers approached [appellee]. The court takes judicial notice that a uniformed officer is armed with a service firearm. While Officer Sheridan asked [appellee] for identification, the other officer walked away towards the tree. There is no articulation on the record that either of the officers were afraid of [appellee]. The officers did not do a protective frisk of [appellee] as a precaution. Officer Sheridan told [appellee] to turn around, and face toward the van, so that [appellee's] back was facing Sheridan. Officer Sheridan was standing one to one and one-half feet away from [appellee]. The other officer reached up into the tree and removed the bag, opened it, then waved to Officer Sheridan signalling drugs. The court finds that the police van obstructed the view of the search from [appellee]. Officer Sheridan then handcuffed [appellee]. Officer Sheridan opened the bag and saw 50 vials of crack cocaine. After a search of [appellee], a beeper and $58 were also confiscated.

Trial Court Opinion, May 25, 1993, at 2–4. Appellee was subsequently charged with possession of a controlled substance [1] and possession of a controlled substance with intent to deliver.[2] A preliminary hearing was held on September 21, 1992 where appellee was held for arraignment on these charges. Appellee filed an omnibus motion to suppress all physical evidence and, after a hearing on January 13, 1993, the trial court granted appellee's motion to suppress. This timely appeal followed.

The Commonwealth contends that as appellee did not have a legitimate expectation of privacy in the bag of crack cocaine, the trial court erred in suppressing its seizure. We agree.

As a general principle, " 'the Fourth Amendment requires that law officers obtain a warrant issued by a neutral magistrate before they intrude into a place of privacy.' " *Commonwealth v. Williams,* 380 Pa.Super. 227, 230, 551 A.2d 313, 315

1. 35 P.S. § 780–113(a)(16).
2. 35 P.S. § 780–113(a)(30).

(1988) (citation omitted), quoting *Commonwealth v. Rispo*, 338 Pa.Super. 225, 230, 487 A.2d 937, 939 (1985). However, "[o]ne such exception to the warrant requirement exists when the property seized has been abandoned." *Id.* (citation omitted). In *Commonwealth v. Shoatz*, 469 Pa. 545, 366 A.2d 1216 (1976), our Supreme Court delineated the test employed to determine whether an abandonment has occurred:

Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. *United States v. Cowan*, 2d Cir.1968, 396 F.2d 83, 87. All relevant circumstances existing at the time of the alleged abandonment should be considered. *United States v. Manning*, 5th Cir.1971, 440 F.2d 1105, 1111. . . . The issue is not abandonment in the strict property-right sense, *but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.* *United States v. Edwards*, supra, 441 F.2d [749] at 753 (5th Cir.1971) ]; *cf. Katz v. United States*, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973).

*Id.* 469 Pa. at 553, 366 A.2d at 1220 (emphasis added).

■ In granting appellee's motion to suppress, the trial court relied, in part, upon the fact that appellee did not intend to permanently abandon the plastic bag. While we agree that appellee did have a subjective intent to retain possession of the bag,[3] we do not find that the trial court was therefore precluded from finding abandonment. *See Commonwealth v. Anderl*, 329 Pa.Super. 69, 83 n. 9, 477 A.2d 1356, 1363 n. 9 (1984). Abandonment can be established where an individual's surrender of possession of the property constitutes such a relinquishment of interest in the property that a reasonable

3. Although appellee deposited the bag in a tree, appellee was careful to situate it where it was not immediately viewable by passersby. Moreover, appellee remained in the vicinity of the bag and accessed the bag when approached by a prospective customer. Clearly, appellee intended to retain possession of the bag.

expectation of privacy may no longer be asserted. *See Williams* 380 Pa.Super. at 231, 551 A.2d at 315.

In the instant action, appellee placed the bag in a tree which was in a public park. As the tree was on public property and, therefore, accessible to anyone frequenting the park, any expectation of privacy in the bag would naturally be lessened by placing it in the tree. *See, e.g., Anderl* 329 Pa.Super. at 84, 477 A.2d at 1363 (appellee's expectation of privacy in the satchel was measurably decreased by hiding it on the property of an unknown third party). *See also Commonwealth v. Cihylik,* 337 Pa.Super. 221, 227, 486 A.2d 987, 990 (1985) ("[P]rinciples of property law reflect society's express recognition of an individual's authority to conduct himself as he desires in certain areas and, while not controlling, 'should be considered in determining whether an individual's expectations of privacy are reasonable.' ") (quoting *Commonwealth v. Sell,* 288 Pa.Super. 371, 432 A.2d 206 (1981) (citations omitted)).

 We point out, however, that the mere fact that the property was placed in an area open to the general public is not sufficient to establish abandonment. The evidence must also clearly demonstrate that the individual attempted to dissociate himself from the property. *See, e.g., Commonwealth v. Williams,* 380 Pa.Super. 227, 551 A.2d 313 (although the VCR and tapes were left unattended on a bench in a bar, as there was no evidence as to how long defendant was gone or whether defendant was aware of the police pursuit, there was insufficient evidence to show that defendant intended to dissociate himself from the property and, hence, suppression was proper); *Commonwealth v. Sanders,* 407 Pa.Super. 270, 595 A.2d 635 (1991) (although defendant placed his black pouch on the hood of the car, as he did not walk away from the car and there was no evidence that defendant was aware of the police officer's presence, the trial court properly found that defendant did not intend to dissociate himself from the property and suppression was proper); *Commonwealth v. Bennett,* 412 Pa.Super. 603, 604 A.2d 276 (1992) (defendant's placement of a duffle bag 6 to 15 feet away from himself against a wall while waiting for a bus did not sufficiently

demonstrate that defendant intended to dissociate himself from the property). Here, appellee's placement of the bag in the tree was more than just a temporary placement of his property beyond his grasp. Rather, appellee strategically placed the bag in the tree so that it was not immediately visible to passersby, stood 10–12 feet away from the tree and approached the bag only to show potential customers what he had to sell. Clearly, appellee's placement of the bag constituted a conscious effort to dissociate himself from the bag in the event there was police intervention.[4] Accordingly, by placing the bag in the tree, appellee effectively abandoned any reasonable expectation of privacy in the bag. Hence, as the warrantless search and seizure of the bag was proper, we hold that the trial court erred in suppressing the bag and its contents from evidence.

Moreover, as the contents of the bag provided the Commonwealth with probable cause to arrest appellee, the search incident to his arrest was proper and the beeper and cash seized from appellee are also admissible. *See Commonwealth v. Frank*, 407 Pa.Super. 500, 510, 595 A.2d 1258, 1263 (1991) (Where sufficient probable cause exists, the police are entitled to conduct a search of appellant "because of the always present danger in an arrest situation that the arrestee may seek to use a weapon or to conceal or destroy evidence.") (citing *Commonwealth v. Tann*, 500 Pa. 593, 598 n. 10, 459 A.2d 322, 325 n. 10 (1983)). Accordingly, the trial court's suppression order is reversed and this case is remanded to trial.

Reversed; remanded to trial; jurisdiction relinquished.

JOHNSON, J. files a Dissenting Opinion.

**4.** Although there is no Pennsylvania case directly on point, *but see In re Baraka*, 6 Cal.App. 4th 1039, 8 Cal.Rptr.2d 221 (1992), the instant action can most readily be likened to the situation where an individual attempts to dissociate himself from the contraband while fleeing from the authorities. *See, e.g., Commonwealth v. Rodriguez*, 385 Pa.Super. 1, 559 A.2d 947 (1989), *appeal denied*, 524 Pa. 619, 571 A.2d 381 (1989). The only difference here is that appellee took precautions to dissociate himself from the contraband in anticipation of such police intervention.

JOHNSON, Judge, dissenting:

I agree with my distinguished colleagues that abandonment is primarily a question of intent. I also agree with the assertion by my colleagues "that appellee did have a subjective intent to retain possession of the bag [containing drugs]." Majority opinion at 658. It is because of my agreement on these key points that I must respectfully disagree with the conclusion of my colleagues and, accordingly, dissent.

All three cases cited by the Majority on the issue of abandonment stand for the principle that there must be an observable act by a party which clearly evidences an *intention* to dissociate from certain property before abandonment can be found. *Commonwealth v. Bennett*, 412 Pa.Super. 603, 604 A.2d 276 (1992); *Commonwealth v. Sanders*, 407 Pa.Super. 270, 595 A.2d 635 (1991); *Commonwealth v. Williams*, 380 Pa.Super. 227, 551 A.2d 313 (1988).

In a footnote, the Majority sets forth the case for the non-abandonment of the property in the appeal now before us as follows:

> While we agree that appellee did have a subjective intent to retain possession of the bag,[3] . . . .

---

[3] Although appellee deposited the bag in a tree, appellee was careful to situate it where it was not immediately viewable by passersby. Moreover, appellee remained in the vicinity of the bag and accessed the bag when approached by a prospective customer. *Clearly, appellee intended to retain possession of the bag.*

Majority opinion at 658 (emphasis added). This is clearly correct. The Majority then proceeds, however, to characterize the defendant's assumed future conduct with these words:

> Clearly, appellee's placement of the bag constituted a conscious effort to dissociate himself from the bag *in the event there was police intervention.*

*Id.* at 659 (emphasis added).

With this sentence, the Majority would seemingly accomplish what could not be accomplished in *Bennett, Sanders,* or *Williams, supra.* By speculating as to the *purpose* or *reason*

for defendant's conduct *prior* to police intervention, the Majority would manufacture a "future abandonment" which is triggered "in the event there was police intervention." Not surprisingly, my colleagues concede that there are no Pennsylvania cases directly on point, but would liken the facts in the present appeal to the situation obtained in *Commonwealth v. Rodriguez*, 385 Pa.Super. 1, 559 A.2d 947 (1989); *appeal denied*, 524 Pa. 619, 571 A.2d 381 (1989).

I am unable to agree with my colleagues' conclusions for several reasons. First, *Rodriguez* is inapposite. There, on a pretrial appeal by the Commonwealth, we held that the defendant's act of throwing away the keys to an abandoned house constituted such a relinquishment of interest in the contents of the house as to defeat the defendant's attempt to assert a reasonable expectation of privacy in its contents. In *Rodriguez*, we concluded that the defendant's lack of standing arising from her act of throwing away the house keys precluded her from even initiating a fourth amendment argument.

Moreover, the Majority would ascribe two diametrically opposed intentions to the single act of the defendant. The Majority first concedes that the careful depositing of the bag in the tree manifests a clear intention by the defendant to retain possession of the bag. My colleagues then assert that the very same act of careful concealment "constituted a conscious effort to dissociate [the defendant] from the bag" assuming a future happening of police intervention. I am unable to join in this reasoning. The facts as found by the distinguished trial judge leave no doubt that the defendant did nothing and said nothing upon being approached by the uniformed officers which could by any stretch of the imagination be understood to be an act of dissociation.

The Majority would hold that the mere placement of the bag in the tree constitutes abandonment where the reviewing court can foretell the actor's intended conduct in the event of police intervention. Perhaps the greatest flaw in this construction is that, in this case, the police did openly intervene, stopping their marked police car within one foot of, and facing, the defendant's body. Rather than dissociating himself from

the bag, as would be required under the theory advanced by the Majority, the defendant stood there, never once saying or doing anything that could be interpreted as dissociating himself from the brown plastic bag placed in the tree.

I decline to join in formulating a rule which would permit the Commonwealth to establish a future intent to abandon property based solely upon the careful concealment of property, which concealment might support an unexpressed desire to disclaim, or throw away, the property involved. At the time the police officer removed the bag from its hiding place in the tree, probable cause for an arrest did not exist nor is there any suggestion that the bag had to be seized and searched to protect the officers' safety. I would find the seizure to have been unlawful and conclude that the order suppressing the evidence was not in error.

Hence this dissent.