J-A23009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LEON CORLOYD ROSE | |
| Appellant | No. 1301 WDA 2015 |

Appeal from the Judgment of Sentence July 30, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014787-2014

BEFORE:  LAZARUS, J., STABILE, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED NOVEMBER 1, 2016**

Leon Corloyd Rose appeals from the judgment of sentence of 11 ½ to 23 months' imprisonment following his conviction of Public Drunkenness,[1] Carrying a Firearm Without a License[2] and Persons Not to Possess a Firearm.[3]  Prior to trial, Rose had filed a motion to suppress the firearm, which police discovered in the center console of his vehicle.  The trial court denied that motion.  On appeal, Rose challenges the order denying suppression, claiming the search was illegal.  After our review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5055.

[2] 18 Pa.C.S.A. §6106(A)(1).

[3] 18 Pa.C.S.A. § 6105(A)(1).

The trial court summarized the relevant factual history as follows:

The facts show that Mr. Rose abandoned his vehicle. His vehicle was found on a Saturday morning around 6:30 a.m., in the lot of a used car business about ½ block from where he was found. The doors were closed. The engine was off. No keys were visible. But, fresh damage all along the entire passenger side was noticed. Officer Smith tried to open a door. It worked. The doors were unlocked. Also, contributing to the decisional mix is Mr. Rose's comments. While intoxicated, he was claiming the car he was found in was his car. A fair inference is that any other car was *not* his. Collectively, the circumstances demonstrated that Mr. Rose abandoned the vehicle. As such, he did not have an expectation of privacy in the vehicle where the gun was found.

Trial Court Opinion, 6/6/16, at 3 (citations omitted).

Notably, the owner of car in which Rose was found had called 911; she asserted there was an unknown male sitting in the driver's seat of her car. Rose, who was visibly highly intoxicated, had entered the complainant's car, believing it was his. Sergeant Regis Smith responded to the call and, on his way to the scene, he noticed another car, with its flashers on, and which was parked in the lot of a business that was closed at that hour. The car also appeared to have damage to the entire passenger side.

Meanwhile, Officer Richard Zilaitis, who also responded to the 911 call, removed Rose from complainant's vehicle and placed him in the back of his patrol car. He instructed complainant to check her car for damage and, in so doing, she found a set of keys that did not belong to her. Rose acknowledged that the keys were his.

Sergeant Smith ran the license plates of the car with the flashers on, believing it might belong to Rose, which it did. Because the car was parked at the front of the lot, blocking entry, Sergeant Smith, who was not aware that the keys were found inside the complainant's car, looked inside the unlocked car for the keys. After finding nothing on the dashboard, he opened the center console. There he found a cellphone, cash and a 9-millimeter firearm. It was later determined that Rose did not have a license to possess a firearm and that he had a prior conviction in Florida that precluded him from doing so.

On appeal, Rose raises the following issue:

> Whether appellant's right under both the Fourteenth Amendment to the United States Constitution ad Article I, Section 8 of the Pennsylvania Constitution to be free from unreasonable search and seizure was violated by the police search of his vehicle absent a warrant, consent, and probable cause.

Appellant's Brief, at 2.

Our standard of review of an order denying suppression is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Bomar**, 826 A.2d 831, 842 (2003).

> Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (citations omitted).

Here, Rose asserts the trial court erred in finding that he had abandoned his vehicle. Our Supreme Court has stated:

> Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. All relevant circumstances existing at the time of the alleged abandonment should be considered. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. Moreover, it is well settled that no one has standing to complain of a search or seizure of property that he has voluntarily abandoned.

*Commonwealth v. Shoatz*, 366 A.2d 1216, 1220 (Pa. 1976) (citations omitted). In other words, "[a]bandonment can be established where an individual's surrender of possession of the property constitutes such a relinquishment of interest in the property that a reasonable expectation of privacy may no longer be asserted." *Commonwealth v. Johnson*, 636 A.2d 656, 658-59 (Pa. Super. 1994). The question, then, is whether Rose's behavior manifested a clear intent to relinquish control of the vehicle. We believe it did.

Pursuant to Shaler Police Department policy, vehicles parked in private lots which have drivers too intoxicated to operate a vehicle, are towed to the police impound lot, after which an inventory search is performed. As Rose accurately points out, however, Sergeant Smith found the firearm in the car

prior to the inventory search. Nonetheless, we agree with the trial court's assessment that Rose had abandoned his car. The fact that Rose left his car parked in a lot, blocking entry to the lot, with the doors unlocked and the flashers on, where anyone could gain immediate entry, is indicia of abandonment. This is not a case of a vehicle simply parked in a public area. Moreover, Rose's abandonment was not caused by any unlawful and/or coercive police conduct. **See Commonwealth v. Byrd**, 987 A.2d 786 (Pa. Super. 2009).

Although not bound by the suppression court's legal conclusions, we are bound by its findings if supported in the record. **Shoatz**, **supra**. Based on the circumstances existing at the time of the search, the factual findings made by the trial court, we discern no legal error in the conclusion that Rose had abandoned his vehicle and, therefore, had no standing to raise a privacy claim. **See Shoatz**, 366 A.2d at 1219. **See also Commonwealth v. Pizarro**, 723 A.2d 675, (Pa. Super. 1998) ("A criminal defendant has no privacy expectation in property that he has voluntarily abandoned or relinquished.").[4]

Judgment of sentence affirmed.

_____

[4] We also note that even if Rose had standing to challenge the search and seizure of his vehicle, that claim would fail based on the inevitable discovery exception to the warrant requirement. **See Commonwealth v. Bailey**, 986 A.2d 860 (Pa. Super. 2009).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/1/2016